**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OUMAR DIALLO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID O'NEILL; Secretary of the DHS** | : | |
| **KRISTI NOEM; PAMELA BONDI;** | : | |
| **JAMAL L. JAMISON** | : | **NO. 25-6358** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                               **November 26, 2025**

When Oumar Diallo arrived at the southern border as an undocumented immigrant in February 2024, government agents arrested him and initiated removal proceedings. He was released on the condition that he report for Department of Homeland Security ("DHS") check-ins and leave the country if ordered to do so. Mr. Diallo accepted those terms. Since then, he has lived in Upper Darby, Pennsylvania.

On November 10, 2025, Mr. Diallo appeared for a scheduled check-in with Immigration and Customs Enforcement ("ICE"). When he did, ICE agents arrested him and put him in detention. The government has refused to provide him a bond hearing to determine whether his detention is lawful. It contends that its refusal is justified under Section 235 of the Immigration and Nationality Act, which hundreds of courts across the country have held does not apply to individuals like Mr. Diallo, who are not actively trying to enter the country and have been living here.

Mr. Diallo contends his detention without a bond hearing violates his right to due process guaranteed by the Constitution and immigration laws. We conclude that it does.

**Background**

Oumar Diallo is a citizen of Guinea who lives in Upper Darby, Pennsylvania.[1] He entered the United States without inspection at the southern U.S. border on February 9, 2024.[2] While crossing the border, he was arrested by Customs and Border Patrol ("CBP") agents and charged with entering the United States without admission or inspection under 8 U.S.C. § 1182(a)(6)(A)(i).[3] CBP placed him in removal proceedings pursuant to 8 U.S.C. § 1229(a).[4] He was released on his own recognizance pursuant to 8 U.S.C. § 1226 and issued a Notice to Appear.[5] He has been required to attend ICE check-ins while awaiting his final Immigration Court hearing.[6] He applied for asylum on September 11, 2024.[7]

On November 10, 2025, Mr. Diallo was arrested at his scheduled ICE check-in and detained.[8] He was transferred to the Federal Detention Center in Philadelphia, Pennsylvania.[9] ICE subsequently issued a custody determination to continue his detention without an opportunity to post bond or be released on other conditions.[10] He has not been provided a bond redetermination hearing.[11]

---

[1] Petition for Writ of Habeas Corpus ("Pet.") ¶¶ 15, 40, ECF No. 1.
[2] *Id.* ¶ 41.
[3] *Id.* ¶¶ 2, 41.
[4] *Id.* ¶ 41.
[5] *Id.*
[6] *Id.* ¶ 42.
[7] *Id.*
[8] *Id.* ¶ 15.
[9] *Id.* ¶¶ 1, 8, 43.
[10] *Id.* ¶ 43.
[11] *See id.* ¶ 56.

Mr. Diallo filed a petition for writ of habeas corpus on November 10, 2025.[12] He alleges that the respondents ("the government") violated the Immigration and Nationality Act ("INA") by unlawfully invoking 8 U.S.C. § 1225(b)(2) (Section 235 of the INA) to order his mandatory detention and deny him a bond hearing.[13]  He asserts that the applicable INA provision is 8 U.S.C. § 1226(a) (Section 236 of the INA).[14]  He also argues that his detention without a bond redetermination hearing violates his right to due process.[15]

Mr. Diallo requests that we declare his detention unlawful and order his release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a).[16]  The issues have been fully briefed, and the parties request an expedited ruling.[17]

## Analysis

The government contends that the INA deprives us of jurisdiction to review Mr. Diallo's habeas petition, and that he has not exhausted his administrative remedies.  The INA provisions upon which it relies do not apply, and Mr. Diallo need not exhaust administrative remedies.

The government argues that if we reach the merits, we should find that its detaining him without a bond hearing is lawful under 8 U.S.C. § 1252(b).  That section does not

---

[12] *See id.* at 13.

[13] *See id.* ¶¶ 46–48.

[14] *Id.* ¶ 5.

[15] *Id.* ¶¶ 53–56.  Mr. Diallo also alleges that the application of 8 U.S.C. § 1225(b)(2) violates 8 C.F.R. §§ 236.1, 1003.19, and 1236.1.  Because we grant his petition on the merits of his INA and due process claims, we do not address the alleged regulatory violations separately.

[16] *Id.* at 12.  Mr. Diallo also requested that we order the government not to transfer him outside the Eastern District of Pennsylvania, and to show cause why his habeas petition should not be granted.  *See id.*  We granted those requests in a previous order. *See* Order dated November 14, 2025, ECF No. 2.

[17] *See* Stipulation dated November 21, 2025 at 2, ECF No. 5.

apply to individuals who, like Mr. Diallo, are in removal proceedings. Section 1226(a) applies. That provision mandates a hearing.

## Jurisdiction

We have jurisdiction to review a habeas petition and grant habeas relief to any person in custody "under or by color of the authority of the United States" or "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2441(c)(1), (3). The INA limits the authority of federal courts to review immigration matters. *See* 8 U.S.C. § 1252. The government argues that three provisions strip us of jurisdiction to review Mr. Diallo's petition—8 U.S.C. §§ 1252(b)(9), 1252(g), and 1252(a)(2)(B)(ii).[18] None does.

### *Section 1252(b)(9)*

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section" and that, "[e]xcept as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact." 18 U.S.C. § 1259(b)(9).

The government contends that Mr. Diallo's petition "requires a court to answer 'legal questions' that arise from 'an action taken to remove an alien'" and thus fall within the scope of Section 1252(b)(9).[19] Not so.

---

[18] *See* Response in Opposition to Petition for Writ of Habeas Corpus and Motion for Restraining Order ("Opp'n") at 8–13, ECF No. 7.

[19] *See* Opp'n at 11 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 n.3 (2018)).

The Supreme Court has held that Section 1259(b) bars review only where a petitioner is seeking review of an order of removal, a decision to detain or to seek removal, or any part of the process by which their removability would be determined. *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). It does not extend to claims that do not seek to interfere with the removal process.

Mr. Diallo's habeas petition challenges the government's invocation of Section 1252(b)(2) to detain him without a bond hearing. The petition is not based on the government's pending decision to remove him. It does not seek review of a legal issue arising from the removal proceedings. Challenging the denial of a bond hearing is "'independent of' and 'collateral to' the removal process." *See Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-5488, 2025 WL 3218243, at *2 (E.D. Pa. Nov. 18, 2025) (citing *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020); 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.")). Thus, Section 1252(b)(9) does not limit our jurisdiction over Mr. Diallo's claims.

### Section 1252(g)

Section 1252(g) provides that "[e]xcept as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Section 1252(g) is limited to three specific actions: (1) commencing proceedings; (2) adjudicating cases; and (3) executing removal orders. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The "arising from" language does not capture every claim that could possibly arise in the immigration context beyond the three specific actions set forth in the statute. *See Jennings*, 583 U.S. at 294. Contrary to the government's contention,[20] Mr. Diallo is not challenging the commencement of his removal proceedings. Nor is he challenging the proceedings generally or anything "arising out of" them. He is challenging the government's detaining him without a bond hearing. Thus, Section 1252(g) does not apply.

### *Section 1252(a)(2)(B)(ii)*

"[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under [the provision allowing asylum applications]." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision precludes review of discretionary decisions made by the Attorney General or the Secretary of Homeland Security.

Mr. Diallo's petition does not challenge a discretionary decision made by the Attorney General or DHS Secretary. No matter which provision—Section 1225(b) or Section 1226(a)—applies, there is no discretion at issue. If Section 1225(b) applies, the government has no choice but to detain him. *See* 8 U.S.C. § 1225(b). If the government

---

[20] *See* Opp'n at 8.

detains him under Section 1226(a), it cannot do so without providing him due process in the form of a bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d). Because there is no discretion involved, Section 1252(a)(2)(B)(ii) does not bar our review.

### Exhaustion of Administrative Remedies

The government argues that Mr. Diallo has not exhausted his administrative remedies.[21] They contend that exhaustion is "particularly appropriate" here because the Board of Immigration Appeals ("BIA") is the "subject matter expert in immigration bond decisions,"[22] and waiving exhaustion would "encourage other detainees to bypass the BIA and directly appeal their no-bond determinations from the [immigration judge] to federal district court."[23]

In *Matter of Yajure Hurtado*, the BIA recently held that Section 1225(b)(2) governs the detention of all noncitizens who are subject to removal proceedings but not on parole because they are all "seeking admission" for the purposes of the detention statutes. 29 I. & N. Dec. 216, 221 (B.I.A. 2025). The BIA reasoned that, because all noncitizens subject to 1225(b)(2) face mandatory detention and are ineligible for a bond hearing, immigration judges ("IJ") do not have authority to entertain bond requests or grant bond. *Id.* at 225. In short, under current policy, no bond hearing is available to persons in removal proceedings.

There is no administrative remedy because *Hurtado* precludes one. Pursuing an administrative remedy would be a meaningless exercise with a predetermined outcome

---

[21] *See id.* at 13–15.

[22] *Id.* at 14 (quoting *Aden v. Nielsen*, Civ. No. 18-1441, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

[23] *Id.* at 14.

that is not dependent on the facts. An IJ cannot review Mr. Diallo's claim. Administrative remedies offer "no reasonable prospect of obtaining relief." *See Demirel*, 2025 WL 3218243, at *4. Exhaustion is illusory.

In any event, a petitioner need not exhaust administrative remedies when the issue presented involves only statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 432–34 (3d Cir 2012) (citing *Bradshaw v. Carlson,* 682 F.2d 1050, 1052 (3d Cir.1981)). To review the merits of Mr. Diallo's habeas petition, we need only determine whether his detention is governed by Section 1225(b) or 1226(a). Since the issue is solely one of statutory interpretation, he is not required to exhaust his administrative remedies even if *Hurtado* had not withdrawn them.

### Wrongful Detention

The merits of Mr. Diallo's habeas petition turn on whether his detention is governed by Section 1225(b)(2) or Section 1226(a). He does not fit within the limited class of immigrants to whom Section 1225(b)(2) applies, his mandatory detention and deprivation of a bond hearing pursuant to that provision are unlawful. If Section 1226(a) applies to Mr. Diallo's detention, he is entitled to a bond hearing.

### *Section 1225(b)*

The government's position is that Mr. Diallo is lawfully detained pursuant to Section 1225(b)(2).[24] Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]." 8 U.S.C. § 1225(b)(2)(A). Detention is

---

[24] *See id.* at 15.

mandatory. Hence, individuals subject to detention under this section are not entitled to bond. See *Jennings*, 583 U.S. at 287.

The government contends that Mr. Diallo "falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement."[25] For that to be correct, he must be both an "applicant for admission" and "seeking admission." See 8 U.S.C. § 1225(b)(2)(A). "Admission" and "admitted" are defined by the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). They have separate, distinct meanings.

### "Applicant for Admission"

Section 1225(a)(1) defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). That means any individual present in the United States without lawful entry or who arrives at the border is treated as having applied for lawful admission even if he has not formally applied. See *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025). We agree with the government's assertion that Mr. Diallo satisfies this requirement because he entered the country without inspection.[26]

### "Seeking Admission"

Not all "applicant[s] for admission" are subject to Section 1225(b)—just those who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). The INA does not define "seeking" or "seeking admission."

---

[25] See *id.* at 16.

[26] See *id.*

Judge Wolson recently conducted a thorough analysis of the plain meaning of the text, statutory context, and legislative history of Section 1225(b). *See Kashranov v. Jamison*, No. 2:25-cv-05555-JDW, 2025 WL 3188399, at *6–7 (E.D. Pa. Nov. 14, 2025). He concluded that Congress intended "seeking admission" to mean "physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization." *See id.* at *6. We agree with his well reasoned analysis.

Judge Wolson observed that this definition is supported by the statutory context of Section 1225(b), as it addresses issues such as the "[i]nspection of other aliens," "treatment of aliens arriving from contiguous territory," and persons "arriving on land . . . from a foreign territory contiguous to the United States." *See id.* at *7 (citing 8 U.S.C. §§ 1225(b)(2), (2)(C). These provisions "situate[] Section 1225(b)(2) within the context of border entry" and show that Section 1225(b)(2) "contemplates inspection and detention at or immediately following border crossing." *Id.*

Section 1101(a)(13) of the INA "confirms that the phrase 'seeking admission' is tied to border entry." *Id.* Section 1101 explains that a lawful permanent resident is generally not regarded as "seeking *an* admission" when returning to the United States. *See* 8 U.S.C. § 1101(a)(13)(C). The Third Circuit has held that this section "'provides aliens, who have previously been admitted and hold legal permanent resident status, with an exception' to the rule that they establish clearly and beyond a doubt entitlement to be admitted 'when they seek to reenter the United States at a port of entry after temporarily leaving the country.'" *Id.* (quoting *Taveras v. Att'y Gen. of U.S.*, 731 F.3d 281, 289–90 (3d Cir. 2013). This evidences that Congress "intended the provision to operate at the border."

*Id.* Just as "seeking an admission" describes "a border-focused process," so too does "seeking admission." *See id.*

The government argues that "applying for admission" and "seeking admission" are interchangeable.[27] In their words, "[A]n 'applicant for admission' is necessarily 'seeking admission.'"[28] That reading renders the "seeking admission" limitation superfluous, and basic tenets of statutory construction reject it. Congress did not include two distinct terms only to have them mean the same thing. *See Pulsifier v. United States*, 601 U.S. 124, 143 (2024); *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023). We agree with the multitude of judges in this court and courts across the country who have rejected the government's interpretation. *See Demirel*, 2025 WL 3218243, at *1 (collecting cases and explaining that, as of last week, only six of 288 district courts addressing this issue agreed with the government's interpretation of Section 1225(b)).

Mr. Diallo is not "seeking admission" to the United States. He sought admission when he arrived at the border nearly two years ago. The government detained and released him,[29] and he has lived here ever since. His removal proceedings have been pending since his arrival. The provision that applies to "aliens already in the country pending the outcome of removal proceeding" is Section 1226(a). *See Jennings*, 583 U.S. at 289. Not Section 1225(b). The government cannot detain Mr. Diallo and deny him a hearing under that provision.

---

[27] *See id.*

[28] *See id.*

[29] Notably, the government's discretionary release of Mr. Diallo in 2024 was "[i]n accordance with section 236 of the Immigration and Nationality Act[.]" *See* Ex. 4 to Pet., ECF 1-4. Section 236 of the INA is 8 U.S.C. § 1226(a).

*Section 1226(a)*

Mr. Diallo contends that Section 1226(a) applies. The government does not disagree. Instead, it argues that "an alien may be subject to both § 1225(b)(2) and §1226(a)" based on its contention that the sections overlap.[30]

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. 1226(a). The government "may continue to detain and arrest" him during removal proceedings or "may release" him on bond or conditional parole. *Id.* § 1226(a)(1)–(2). If the government continues to detain him, he may seek review of that decision via a bond hearing before an immigration judge. *See* 8 C.F.R. § 236.1(d)(1); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). At that hearing, the IJ must release him unless the government establishes that he poses a danger to the community or a flight risk. *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 276 (3d Cir. 2018).

ICE agents arrested and detained Mr. Diallo while his removal proceedings were pending. Section 1226(a) is the only applicable provision here.

Due Process

The Fifth Amendment guarantees the right to be free from deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. The right extends to all "persons" regardless of status, including non-citizens, whether here lawfully, unlawfully, temporarily, or permanently. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The due process right of an individual detained under Section 1226(a) includes

---

[30] *See* Opp'n at 20.

a right to an individualized detention determination and a bond hearing. *See* 8 C.F.R. § 1236.1(c)(8), (d).

Whether an official action violates procedural due process turns on three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

The *Mathews* factors weigh heavily in favor of a finding that the government has violated Mr. Diallo's right to due process.  He has a liberty interest in being free from official restraint. *See Kashranov*, 2025 WL 3188399, at *5.  The lack of individualized assessment creates a high risk that his detention without a hearing is erroneous. *See id.* A bond hearing "imposes little administrative burden."  *See id.*  Weighing these factors, the minimal effort of providing a bond hearing is far outweighed by Mr. Diallo's significant interest in being free from official restraint and the high risk of unlawful detention.  The government's detaining him without a hearing pursuant to Section 1225(b) denies Mr. Diallo his constitutionally mandated right to due process.

## Conclusion

Mr. Diallo's detention without a bond hearing violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment. Therefore, we will grant his petition for writ of habeas corpus.